IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| NATHAN CRAWFORD, | |
| Plaintiff, | |
| v. | 2:23-CV-152-Z-BR |
| WEST TEXAS A&M UNIVERSITY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant West Texas A&M University's ("WTAMU") Motion for Summary Judgment ("Motion"), filed February 20, 2025. ECF No. 44. Plaintiff Nathan Crawford responded on March 27, 2025. ECF No. 51. WTAMU replied on April 10, 2025. ECF No. 54. The Motion is now ripe. Having reviewed the Motion, briefing, and relevant law, the Motion is **GRANTED**.

### BACKGROUND

This is an employment retaliation case brought by Nathan Crawford, a former officer with the WTAMU campus police department. ECF Nos. 45 at 5, 51 at 6. In August 2021, WTAMU officer Allison Munsell contacted Chief Burns about her patrol sergeant, Aaron Price, for retaliating against her and threatening write-ups. ECF No. 45 at 8. Burns referred the matter to the WTAMU Title IX Director, who oversaw a Title IX investigation related to Sergeant Price. *Id.* As part of this investigation, multiple female officers filed complaints through the WTAMU Title IX Office. *Id.* at 5. Crawford participated in this investigation as a witness, where he told a Title IX investigator that "[Munsell] did confide in me a couple months ago that she was having problems with Sergeant Price. Specifically with what she deemed as sexual harassment, gender-based issues." *Id.*; ECF No. 45-1 at 92–93. When asked

by the investigator whether Munsell used the words "sexual harassment" with him, Crawford replied "yes." *Id.*

On August 17, 2022, the Texas A&M University System Ethics & Compliance Office ("SECO") initiated a follow-up investigation against Crawford for potential failure to report Munsell's sexual harassment in violation of A&M System Regulation 08.01.01 and Texas Education Code Section 51.252. ECF No. 45 at 9. Following referral of the matter to Dr. Brandon Bang, Crawford was sanctioned and required to write an essay discussing, in part, the reporting requirements of the Texas Education Code. *Id.* at 9.

On October 11, 2022, Chief Burns and Assistant Chief Byrd engaged in a phone call in which they discussed Crawford's potential failure to report the sexual harassment suffered by Munsell. ECF Nos. 45 at 10, 45-1 at 68. Byrd took this call from Burns in his office on speaker phone. ECF No. 45-1 at 68. Crawford alleges that the discussion was "retaliatory" and that he "heard the conversation from his desk in his office," approximately sixteen feet away from Byrd's office. ECF Nos. 51 at 11, 45 at 10. However, Crawford was seen on video surveillance recording the conversation with his phone around the corner from Byrd's office. *Id.* Crawford then emailed an attachment of the audio recording to SECO, stating the recording was "from [his] desk in [his] office. It's that loud." *Id.*



On December 7, 2022, Byrd opened an internal affairs investigation (the "Byrd Investigation") regarding Crawford lying about his recording of Burns's and Byrd's phone call. ECF No. 45-1 at 68. Crawford was notified of the Byrd Investigation on February 6, 2023, and was suspended with pay pending the investigation's results. ECF Nos. 45 at 11, 45-1 at 68. Because of the Byrd Investigation, Crawford initiated a reciprocal investigation against Chief Burns for retaliation (the "Crawford Investigation"). ECF No. 45-1 at 121 (alleging "that the [Byrd Investigation] was improper and retaliatory"). Dr. Rex Pjesky was appointed as the designated administrator of the Crawford Investigation. ECF No. 45-1 at 120.

Chief Burns recused himself from the Byrd Investigation, assigned the project to Assistant Chief Kyle Hawbaker (who replaced Assistant Chief Byrd following his retirement), and requested the Counsel of Texas A&M University System Law Enforcement Administrators appoint an outside panel to review the Byrd Investigation evidence and render an impartial decision. ECF Nos. 45 at 11, 51 at 12. Chiefs Bryan Vaughn of Texas A&M Commerce and Matt Welch of Tarleton State University were appointed. *Id.*

Vaughn and Welch reviewed the Byrd Investigation and conducted their own independent research into the matter, concluding that Crawford was dishonest in his communications and recommending that "Crawford face termination from WTAMU and a dishonorable discharge in his F-5 form to the Texas Commission on Law Enforcement." ECF Nos. 51 at 12, 45 at 11, 45-1 at 71–72. Before this action was approved, Crawford submitted his resignation on May 12, 2023. ECF Nos. 51 at 12 (Crawford stating that he was "forced to resign in protest and under pressure" from the investigation), 45 at 11.

Shortly after Crawford's resignation, Chief Burns issued a dishonorable discharge against Crawford's peace officer license. ECF No. 51 at 14. Later, on May 23, 2023, the designated administrator for the Crawford Investigation, Dr. Rex Pjesky, concluded that

"Burns had a duty to respond to misconduct alleged against his officers" and that Burns's "actions in response to Byrd's complaint were not in violation of System regulation or Department policy." ECF No. 45-1 at 121.

Crawford filed a charge of discrimination with the EEOC on June 20, 2023. ECF No. 1 at 3. The EEOC issued a right to sue letter on June 22, 2023. *Id*

\* \* \*

Crawford's Complaint, filed September 20, 2023, alleges four primary adverse employment actions. First, Crawford alleges that then-Lieutenant Kyle Hawbaker told him in July 2022 that he "had no chance of making sergeant." ECF No. 1 at 2. Second, Crawford discusses WTAMU's disciplinary proceeding against him for the potential failure to report Munsell's sexual harassment and discrimination claims. *Id.* at 3. Crawford contends that initiation of this proceeding was "targeting" and retaliation. *Id.* Third and fourth, Crawford alleges that on February 6, 2023, he was suspended with pay and then investigated for recording Chief Burns's private phone discussion with Assistant Chief Byrd. *Id.*

### LEGAL STANDARD

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant meets its initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). Facts are considered "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining whether a genuine issue as to any material fact exists, [courts] must view the evidence in the light most favorable to the nonmoving party." *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 348–49 (5th Cir. 2008).

4

"[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted). Further, "Rule 56 does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citations omitted). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451 (citing FED. R. CIV. P. 56(c)).

## ANALYSIS

### I. Allegedly retaliatory acts occurring before August 24, 2022, are timebarred.

Employees must adhere to certain filing requirements under Title VII. Specifically, "a plaintiff filing a complaint regarding an employment practice occurring in Texas has 300 days [after the alleged unlawful practice occurred] to file a charge with the EEOC under Title VII." *Tompkins v. Amarillo Coll.*, No. 2:19-CV-027, 2021 WL 4796916, at *4 (N.D. Tex. May 14, 2021) (quoting *Garcia v. City of Amarillo*, No. 2:18-CV-095, 2020 WL 4208060, at *3 (N.D. Tex. July 22, 2020)); 42 U.S.C. § 2000e-5(e)(1). Congress intended this 300-day deadline to operate as a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 395 n.12 (1982) (noting "that Congress intended the filing period to operate as a statute of limitations instead of a jurisdictional requirement"). Accordingly, recovery is precluded for any "discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

5

Crawford filed a charge of discrimination with the EEOC on June 20, 2023. ECF No. 1 at 3. WTAMU argues that, based on this date of filing with the EEOC, any "claims based on conduct occurring earlier than August 24, 2022 (or 300 days before he filed his charge) would be untimely, and should be dismissed as time-barred." ECF No. 45 at 13. By this logic, the Court would be prohibited from considering two of Crawford's alleged adverse employment actions: (1) when, in July 2022, "he was told he had no chance of making sergeant"; and (2) when, on August 17, 2022, "WTAMU initiated a disciplinary proceeding against him, claiming that he failed to report the sexual harassment and sex discrimination claims involved in the prior Title IX investigation." *Id.* at 14. WTAMU is correct—and Crawford does not appear to contest—that these actions are time barred. *See* ECF Nos. 51 (Crawford failing to address either of the two time-barred claims), 54 at 4 (WTAMU noting that Crawford "abandon[ed]" two out of three claims in his response). Accordingly, acts occurring outside of the 300-day deadline—including the July 2022 comment that Crawford would not make sergeant and the initial August 17, 2022, investigation—are time barred and may not be considered by this Court.

### II. No genuine issue of material fact exists regarding Crawford's retaliation claim.
#### A. The *McDonnell Douglas* Framework

The Court begins with the merits of Crawford's retaliation claim, considering only the allegedly retaliatory acts occurring within the limitations period. Typically, Title VII retaliation claims proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021). Crawford argues, however, that the *McDonnell Douglas* framework should not be used in the instant case because "Crawford has direct evidence of WTAMU's retaliatory intent in Burns's actions against him." ECF No. 51 at 14. Where a plaintiff can "support the elements of [his] claim with direct evidence of a retaliatory motive,

6

the *McDonnell Douglas* framework does not apply." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414–15 (5th Cir. 2003) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1984)). Direct evidence is evidence which, "if believed, proves the fact [in question] without inference or presumption." *Fabela*, 329 F.3d at 415 (quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 328–29 (5th Cir. 1994)).

Crawford points to three pieces of "direct evidence": (1) a comment by Chief Burns that he wanted to "stack bodies," referring to Title IX employees working across the hall; (2) statements made by Chief Burns to Lieutenant Ferrara—a different WTAMU officer—regarding his distaste for complaining employees; and (3) testimony by former Title IX Director Georganna Ecker and her successor Jeremie Middleton communicating their belief that the actions against Crawford "were retaliatory." ECF No. 51 at 16. But none of this allegedly direct evidence refers specifically to Crawford, and none can prove adverse employment action motivated by retaliation without the need for "inference or presumption." *Fabela*, 329 F.3d at 415; *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1055 (5th Cir. 2023) (statements that do not show that an improper criterion served as a basis for adverse employment action, without inference or presumption, are merely "stray remarks"). None of the Crawford's "direct evidence" provided by Crawford shows that his participation in Price's Title IX investigation was a motivating factor for Crawford's February 2023 suspension and investigation. Thus, the Court proceeds using the *McDonnell Douglas* framework.

Under this framework, the initial burden rests with Crawford to establish that he (1) "participated in an activity protected by Title VII"; that (2) his "employer took an adverse employment action" against him; and that (3) "a causal connection exists between the protected activity and the adverse employment action." *Leal v. McHugh*, 731 F.3d 405, 416–17 (5th Cir. 2013). If Crawford establishes a prima facie case, the burden then shifts to WTAMU to show a legitimate, nonretaliatory reason for its decision—upon this showing, the

7

ultimate burden rests on Crawford to show that WTAMU's reason is pretext for retaliation. *Katz v. Wormuth*, No. 22-30756, 2023 WL 7001391, at *7 (5th Cir. Oct. 24, 2023).

### B. Protected Activity

The Court's initial inquiry is whether Crawford has participated in an activity protected by Title VII. Crawford contends, and WTAMU does not dispute, that his participation as a witness in Sergeant Price's Title IX investigation constitutes "protected activity for purposes of Title VII." ECF No. 51 at 7.

Crawford is correct. An employee has engaged in protected activity if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII; or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *see also Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Of these two forms of protected activity—opposition and participation—Crawford's participation as a witness in Price's Title IX investigation fits most neatly into the "opposition" category. *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 289 (5th Cir. 2020) ("Title VII outlines two forms of protected activity: opposition and participation."). This is because Crawford, by participating in the Title IX investigation, opposed an employment practice deemed unlawful under Title VII: sex discrimination. 42 U.S.C. § 2000e-2(a)(1) (stating that it is unlawful employment practice for an employer to "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin"); *see* ECF Nos. 41 at 10, 48 at 8–9 (describing Price's Title IX investigation featuring "complaints from multiple women against Sgt. Price for sex discrimination").

Although Crawford participated in an investigation, it was an investigation under Title IX—*not* an investigation "under Title VII" as statutorily required. Thus, the information Crawford disclosed to Title IX investigators constitutes opposition to sex discrimination and

8

thus protected activity for purposes of Title VII. Crawford has satisfied the first element of his retaliation claim.

### C. Materially Adverse Employment Action

The Court turns to the second element of Crawford's retaliation claim: whether WTAMU, Crawford's former employer, "took an adverse employment action" against him. *Leal*, 731 F.3d at 416–17. "For an employer's act to qualify as a materially adverse action, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). In determining whether an allegedly retaliatory action is "materially adverse," courts often "look to indicia such as whether the action affected job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers." *Katz*, 2023 WL 7001391, at *7.

Crawford alleges two primary retaliatory acts occurring within the 300-day limitations period: his suspension with pay and investigation on February 6, 2023, for recording the phone conversation between Chief Burns and Assistant Chief Byrd and lying about where the recording took place. ECF No. 51 at 11–12. Crawford contends that he "had the right to be in his office" and "the foyer," that there is "no reasonable expectation of privacy in this area," and that he did not "commit[] any fire-able offense." ECF No. 51 at 12, 20. Thus, Crawford believes that "WTAMU's alleged reasons for initiating [this investigation] and selectively enforcing [it] against Crawford," as well as Crawford's suspension, are mere pretext for retaliatory action. *Id.* at 20.

The question now before the Court is whether these allegedly retaliatory actions qualify as "materially adverse." Suspension with pay does not constitute adverse employment

9

action. *See, e.g., Breaux v. City of Garland*, 205 F.3d 150, 164 (5th Cir. 2000) ("The retaliation they complained of," including "suspension with pay," does not "constitute adverse employment action."); *Espinoza v. Brennan*, No. 14-CV-290, 2016 WL 7176663, at *4 (W.D. Tex. Dec. 7, 2016) (the employee's "paid suspension was not an adverse employment action"); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) ("A suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action."). And neither does the initiation of an internal investigation. *Magiera v. City of Dall.*, 389 F. App'x 433, 437–38 (5th Cir. 2010) (finding that an employee's retaliation claim, based in part on "Internal Affairs investigat[ing] complaints lodged against her," did not constitute materially adverse employment action); *King v. Holder*, 950 F. Supp. 2d 164, 173 (D.D.C. 2013) ("[T]he request for an investigation by an independent body (as opposed to the disciplinary action that may follow) does not constitute an actionable adverse employment action" (quoting *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004))).

Crawford's assertion that his dishonorable discharge constitutes retaliatory action by Burns also fails. ECF No. 51 at 14 ("Burns wrongfully issued a dishonorable discharge against Crawford's peace officer license in retaliation."). Although Crawford contends in his response that the issue of his dishonorable discharge "is within the scope of Crawford's charge and complaint," neither Crawford's Complaint nor his EEOC charge mention the dishonorable discharge. *See* ECF Nos. 1, 51-1 at 597–99. Because this allegation was not raised in his complaint or EEOC charge, Crawford may not raise it "for the first time in [his] summary judgment response." *Ware v. Bank of Am., Nat'l Ass'n*, No. 3:21-CV-2824, 2023 WL 6071179, at *9 (N.D. Tex. Aug. 28, 2023) ("Because these allegations were not raised in the first amended complaint, Plaintiffs cannot raise them for the first time in their summary judgment response."); *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th

Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Thus, the Court does not consider Crawford's dishonorable discharge. Crawford has failed to satisfy the second element of his retaliation claim.

### D. Causation

Though not required, the Court turns as a matter of prudence to the third element of Crawford's retaliation claim: whether "a causal connection exists between the protected activity and the adverse employment action." *Leal*, 731 F.3d at 416–17. To demonstrate this third element, "a plaintiff must demonstrate that the employer's decision was based in part on knowledge of the employee's protected activity." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020). A causal connection can "be established simply by showing close enough timing between two events." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019).

Even if Crawford's investigation and suspension constituted adverse employment actions—and they do not—Crawford fails to establish a causal connection between these actions and his involvement in Price's Title IX investigation. As WTAMU points out, the "investigation and decision-making was done not by Chief Burns, but by two Texas A&M System Chiefs who lacked knowledge of Crawford's protected activity." ECF No. 45 at 16. Crawford argues that despite Burns's recusal, he still "influenced the outcome of the administrative investigation" based on his relationship with Assistant Chief Hawbaker. ECF No. 51 at 22. And because Hawbaker "is the source of the memo to the external chiefs," Crawford contends, a causal link is established. *Id.*

"To demonstrate the causal prong of a retaliation claim on summary judgment, a plaintiff must at least raise a question about whether [a final decisionmaker] was aware of the protected activity." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004).

11

If the final decisionmaker lacked knowledge of the employee's participation in protected activity, the retaliation claim cannot survive summary judgment. *See, e.g., Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 258 (5th Cir. 2009). Just so here. Both Chief Bryan Vaughn and Chief Matt Welch recommended Crawford face termination without knowledge of his protected activity—mere speculative assumptions regarding Burns's influence on Hawbaker or Hawbaker's influence on Vaughn and Welch fall short. *Id.* (rejecting "speculative inferences" as proof that a final decisionmaker was aware of an employee's involvement in protected activity); ECF No. 45-1 at 71, 73 (Vaughn and Welch's declarations stating that "prior to making [their] recommendations, [they] had no knowledge that Crawford had participat[ed] in a Title IX investigation"). At the core, Crawford falsely represented that he recorded Byrd and Burns's phone call from his desk—an objective, nonpretextual basis for Chiefs Vaughn and Welch to conclude he acted dishonestly and recommend termination. The deliberate choice to lie, rather than involvement in protected activity, is the root cause of Crawford's suspension and investigation.

Further, if the Court were to assume *arguendo* that Crawford's dishonorable discharge constituted adverse employment action—despite Crawford's failure to raise the allegation in his Complaint and EEOC charge—it would similarly fail for lack of a causal connection. Crawford has failed to show that Chief Burns's decision to issue a dishonorable discharge against Crawford's peace officer license was based on his involvement in Price's Title IX investigation. Rather, Chiefs Vaughn and Welch recommended a dishonorable discharge because of dishonesty—one of many permissible bases for dishonorable discharge—and Chief Burns followed that recommendation. ECF Nos. 51-1 at 393, 54 at 5. Crawford's unsupported allegations failed to establish a causal connection on this issue sufficient to defeat summary judgment. *See Aguillard v. La. Coll.*, 824 F. App'x 248, 251 (5th Cir. 2020) (affirming the district court's grant of summary judgment in part based on plaintiff's

inadequate summary-judgment evidence regarding a causal connection); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) (finding summary judgment appropriate where the nonmoving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").

Finally, Crawford cannot rely on temporal proximity as evidence of a causal connection. Crawford participated in Price's Title IX investigation in August 2021, and the Byrd Investigation occurred in February 2023. ECF Nos. 45 at 17, 51 at 6–7. The Court finds that this amount of time is not so close that it must "accept mere temporal proximity . . . as sufficient evidence of causality." *Clark Cnty. Sch. Dist.*, 532 U.S. at 273–74 (citing cases where three or four months between the protected activity and adverse employment action was insufficient to establish a causal connection); *Tompkins*, 2021 WL 4796916, at *18. Crawford's retaliation claim fails for lack of an adverse employment action, as well as lack of a causal connection.

### CONCLUSION

Because WTAMU has demonstrated that it is entitled to judgment as a matter of law as to all of Crawford's claims, WTAMU's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**.

July __1__, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE